UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS M.,

                           Plaintiff,

v.                                                      1:19-CV-1151
                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     CORINNE MANFREDI, ESQ.
  Counsel for Plaintiff                                KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   FRANCIS TANKARD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   PAMELA MCKIMENS, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 14.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1968. (T. 93.) He completed high school. (T. 218.) Generally, Plaintiff's alleged disability consists of rheumatoid arthritis in his lower back, hepatitis C, and high blood pressure. (T. 217.) His alleged disability onset date is October 1, 2015. (T. 214.) His date last insured is December 31, 2019. (*Id*.) His past relevant work consists of chef. (T. 218.)

### B. Procedural History

On February 19, 2016, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 93.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 30, 2018, Plaintiff appeared before the ALJ, Lynette Gohr. (T. 35-70.) On May 31, 2018, ALJ Gohr issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-34.) On June 28, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-29.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2019 and Plaintiff had not engaged in substantial gainful activity since October 1, 2015. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: lumbar degenerative disc disease and spondylosis; osteoarthritis of the left knee; depressive disorder; and anxiety disorder. (*Id*.) Third, the

ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); except, Plaintiff:

> can frequently climb ramps and stairs but never climb ladders, ropes or scaffolds.  [Plaintiff] can frequently balance, stoop, kneel, crouch and crawl.  [Plaintiff] is able to work in a low stress environment, defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes.

(T. 21.)  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 27.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ's reliance on stale opinions resulted in a disability decision not supported by substantial evidence.  (Dkt. No. 10 at 10-17.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 13.)

### B.     Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues substantial evidence supported the ALJ's decision.  (Dkt. No. 12 at 17-22.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

3

*Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

4

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.   ANALYSIS

Plaintiff argues the ALJ erred in formulating her physical RFC determination because she relied on the stale opinion provided by consultative examiner, Donna Miller, D.O. (Dkt. No. 10 at 10-17.) Plaintiff argues his conditions worsened after Dr. Miller provided her opinion and therefore her opinion was stale. (*Id.*)

Plaintiff also appears to argue the ALJ failed to contact Plaintiff's treating sources for a recent functional capacity assessment. (Dkt. No. 10 at 15 ("At the very least, the

ALJ could have contacted any one of Plaintiff's many medical providers and asked them to render an updated medical opinion on Plaintiff's functioning given the existence of subsequent diagnoses and medical conditions rendered after Dr. Miller's 2016 opinion.").)  In the alternative, Plaintiff argues the ALJ "could" have requested a subsequent consultative examination.  (*Id*. at 16.)  Lastly, Plaintiff argues even if Dr. Miller's opinion was not rendered stale by subsequently submitted evidence, the RFC failed to encompass all of the doctor's opined limitations.  (*Id*. at 16.)

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).  "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).

A medical opinion may be stale if it does not account for the plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence.  *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 643 (2d Cir. May 18, 2020).

Here, remand is not required.  First, although Dr. Miller's opinion was provided early in Plaintiff's application process, newer evidence in the record did not directly contradict the doctor's findings and the ALJ fully analyzed the more recent evidence.  *See Blash,* 813 F. App'x at 643.  Plaintiff cites evidence in the record which he argues

6

supports a finding of worsening symptoms; however, the ALJ discussed the evidence cited by Plaintiff and concluded otherwise.

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Second, in formulating Plaintiff's RFC, the ALJ considered not only Dr. Miller's opinion, but the record as a whole. *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone).

Dr. Miller examined Plaintiff on March 18, 2016. (T. 337-340.) Plaintiff had full cervical spine range of motion, reduced lumbar spine range of motion, negative straight

leg raising, and reduced knee flexion-extension without subluxation, contractures, ankylosis, redness, heat, swelling, or effusion.  (T. 339.)  Plaintiff had normal strength and deep tendon reflexes, no sensory deficits, no muscle atrophy, and no cyanosis, clubbing, or edema.  (T. 339.)  Dr. Miller opined Plaintiff had mild limitations with heavy lifting, bending, and carrying.  (T. 340.)

The ALJ afforded Dr. Miller's opinion "significant weight."  (T. 25.)  The ALJ concluded Dr. Miller was an acceptable medical source with program knowledge, the opinion was supported by a detailed examination, including an x-ray of the lumbar spine.  (*Id*.)  The ALJ concluded the opinion was consistent with clinical findings of grossly normal neurological findings in gait, station, coordination, fine motor dexterity and grip strength and sensation and reflexes with no gait abnormality and ability to fully squat, use no assistive devices, required no help mounting or dismounting the exam table or rising from a chair as well as the lumbosacral x-ray showing no significant bony abnormality.  (*Id*.)  The ALJ also concluded Dr. Miller's findings were consistent with "the longitudinal treatment records" such as conservative and routine medication treatment, no referral or treatment by a specialist, grossly normal objective findings on examinations, and Plaintiff's activities of daily living.  (*Id*.)  As noted by the ALJ, the record does not contain any opinions from treating sources.  (T. 25.)

In addition to Dr. Miller's examination and opinion, the ALJ relied on other evidence in the record in formulating Plaintiff's RFC.  The ALJ considered objective medical imagining of Plaintiff's spine from 2015 and 2017, imaging of his left knee from 2018, and a 2017 nerve conduction study.  (T. 23-24.)

The ALJ considered objective examinations findings which indicated normal range of motion, strength and tone without neurological deficits and notations that Plaintiff's lumbago was "resolved."  (T. 24.)  Indeed, in June 2015 a physical examination indicated Plaintiff had normal range of motion, strength and tone.  (T. 304.)  Plaintiff was advised to alternate cold packs and moist heat for pain relief, cease smoking to improve oxygen delivery to spinal tissue, and have an x-ray of the cervical spine.  (T. 306.)  At a follow up appointment later that month Plaintiff reported back pain and on examination had normal range of motion, strength and tone.  (T. 293-294.)  Notations dated and October 27, 2015 and February 29, 2016 indicated "no back pain."  (T. 362, 368.)  In February, March, April, and May 2016 Plaintiff reported chronic pain in his back and on examination he had normal gait, station, muscle tone and full strength.  (T. 379, 382, 385, 388, 391, 394.)

The ALJ considered treatment records from UB Orthopedics and Sports Medicine where Plaintiff received treatment for his back pain in 2016 through 2017.  (T. 23.)  For example, Rajiv Jain, M.D. evaluated Plaintiff's back pain on October 26, 2016.  (T. 494.)  Dr. Jain observed Plaintiff walked with a normal gait, had tenderness at the lower lumbosacral segments bilaterally, had pain with range of motion, his heel and toe walk was normal, slump test was negative bilaterally, and he had right straight leg raise with low back pain.  (T. 495.)  He further observed Plaintiff had full strength in his lower extremities.  (*Id*.)  Dr. Jain suggested Plaintiff follow up for possible injections or other treatment such as acupuncture or medication.  (T. 495-496.)

In February 2018, Plaintiff reported "significant benefit with [medication] for his pain."  (T. 733.)  On examination Plaintiff had normal gait, station, and muscle tone as

9

well as full strength.  (T. 734.)  In March 2018, notations indicated Plaintiff had "a long history of chronic low back pain;" however, Plaintiff reported no musculoskeletal symptoms at that time and on examination he had normal gait and station with normal muscle tone and full strength.  (T. 730-731.)

Lastly, the ALJ considered Plaintiff's activities of daily living.  (T. 23, 25.)  The ALJ noted Plaintiff was independent in his personal hygiene, could prepare meals, engage in chores, visit with friends and family, shop, handle finances, watch television, care for his grandchildren, and use public transportation.  (T. 23.)  Indeed, Plaintiff's Function Report states he got his grandchildren up and ready for school in the morning, fed his cat, took his spouse to work, prepared meals, went shopping for food, watched television and sports, played electronic games, talked on the telephone, attended church three times weekly, participated in social groups twice weekly, and attended counseling twice monthly.  (T. 223-227.)  Other evidence shows Plaintiff cooked, cleaned, did laundry, went grocery shopping, performed childcare, used public transportation, and watched television.  (T. 52-55, 57, 338, 450.)

Overall, although Dr. Miller's opinion was provided early in the application process, her opinion was not rendered impermissibly stale due to subsequently submitted evidence.  In formulating an RFC determination, the ALJ thoroughly analyzed all of the evidence in the record, including the evidence provided after Dr. Miller's opinion.  The ALJ thoroughly considered the record as a whole, including Dr. Miller's opinion, Plaintiff's treatment history, and his activities of daily living. *Teresa L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-682, 2020 WL 6875254, at *3 (W.D.N.Y. Nov. 23, 2020) (the Court finds that the ALJ thoroughly considered the evidence of record, including the

medical opinion evidence and other objective medical evidence, Plaintiff's mostly conservative treatment, and her fairly extensive activities of daily living, and properly formulated Plaintiff's RFC based on the record as a whole).

Plaintiff's argument that the ALJ's RFC failed to include "any limitations on Plaintiff's ability to bend" is without merit.  (Dkt. No. 10 at 16.)  The term "bending" encompasses stooping, kneeling, crouching, and crawling.  SSR 85-15.  As SSR 85-15 explains, stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body.  Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work.  *Id*. If a person can occasionally stoop or crouch (bend downward and forward by bending both the legs and spine), the sedentary and light occupational base is virtually intact.  *Id*. However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world or work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).  *Id*.  The ALJ found that Plaintiff could frequently balance, stoop, kneel, crouch, and crawl.  (T. 21.)  The ALJ's determination is consistent with a mild bending limitation.

Indeed, numerous courts within the jurisdiction of the Second Circuit Court of Appeals have recognized that a plaintiff's moderate limitations in the ability to bend, lift, carry, push, or pull do not preclude light work.  *Casro-Pastrana v. Comm'r of Soc. Sec.,* No. 18-CV-6902, 2020 WL 4933673, at *4 (W.D.N.Y. Aug. 24, 2020); s*ee Burch v. Comm'r of Soc. Sec.,* No. 17-CV-1252P, 2019 WL 922912, at *4-6 (W.D.N.Y. Feb. 26, 2019) (collecting cases and finding that the consultative examiner's opinion that the

claimant had moderate limitations in the ability to lift, carry, push, and pull, along with the ALJ's stated reasons, "support[ed] the finding that, despite the moderate limitations[,] ... [the claimant] could still perform light work"); *see Richardson v. Colvin*, No. 15-CV-6276, 2016 WL 3179902, at *8 (W.D.N.Y. June 8, 2016) (collecting cases for the proposition that "moderate limitations [on 'repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying'] ... are frequently found to be consistent with an RFC for a full range of light work") (internal citations omitted).  Therefore, if a moderate limitation in bending is not inconsistent with light work, a lesser, mild limitation would not preclude light work.

In addition, bending encompasses stooping, kneeling, couching and crawling which are all "progressively more strenuous forms of bending." SSR 85-15.  The occupations provided by the vocational expert at Plaintiff's hearing and relied on by the ALJ in making her determination, either do not require stooping, kneeling, crouching or crawling or require the actions only occasionally.  (T. 28); *see* DOT 211.462-010; 323.687-014; 299.677-010.  The occupation of cashier, DOT 211.462-010, does not require stooping, kneeling, crouching or crawling.  The vocational expert testified that there were 2.4 million cashier occupations nationally.  (T. 66.)  Even if the ALJ limited Plaintiff to no bending, he could still perform the occupation of cashier.  *See McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (the vocational expert's testimony that one job existed in the national economy that plaintiff could perform was sufficient to meet Commissioner's step-five burden).  Therefore, the RFC for a reduced range of light work encompassed "mild" limitations in the ability to bend.

Plaintiff's argument that the ALJ "could have" re-contacted a treating source or requested an updated consultative examination is without merit. (Dkt. No. 10 at 15.) Although ALJs have a duty to develop the record, no further development was necessary in this case. *See* 20 C.F.R. §§ 404.1512(b), 416.912(b). Consultative examinations may be ordered where the existing evidence is insufficient for the ALJ to make a determination. *See Id*. §§ 404.1519a, 416.929a. If there are no obvious gaps in the record, the ALJ is not obligated to seek additional information. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011). Here, the objective medical evidence, examination evidence, Plaintiff's treatment and response to treatment, medical opinion evidence, Plaintiff's reported activities of daily living, and Plaintiff's testimony provided ample evidence for the ALJ to formulate a well-supported RFC finding. *See Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (he ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability). The record contained an examination and opinion by a consultative examiner, numerous treatment records, and Plaintiff's testimony; therefore, the record was sufficient for the ALJ to make a determination.

In sum, the ALJ has the duty to evaluate conflicts in the evidence. *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a

reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek,* 139 S. Ct. 1148.

Here, the medical opinion provided by the consultative examiner was not rendered stale by subsequent evidence in the record. The ALJ considered the opinion provided by the consultative examiner in combination with all the evidence in the record. Further, the ALJ was not required to re-contact a treating source or obtain an updated consultative examination because the evidence in the record was sufficient for the ALJ to make a determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 19, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge